Good morning, Your Honors. May it please the Court, my name is Mark Teeter. I represent Petitioner John Kalouma and his appeal from the Board of Immigration Appeals, denial of his claim for asylum, withholding of removal, and protection under the Convention Against Torture. With the Court's permission, I'd like to reserve two minutes for rebuttal. The principal issue before the Court today is whether John Kalouma's testimony before the immigration judge was credible. The IJA made an adverse credibility finding that in order to stand must be supported by substantial evidence. That means that the IJA must set forth specific and cogent reasons for his findings, and those reasons must bear a substantial and legitimate nexus to the finding. I submit that the IJA's reasoning here is flawed, and that his adverse credibility determination is not based on substantial evidence and must be reversed for at least the following three reasons. First, the omission of information from an asylum application by itself is not substantial evidence that can support an adverse credibility determination. Second, finding that the petitioner's testimony is implausible cannot be based on merely the IJA's personal speculation or conjecture. And third, minor inconsistencies in the petitioner's testimony that don't enhance or go to the heart of the petition. In the instant case, each of these Ninth Circuit rules militate for reversal of the IJA's adverse credibility determination. I'd like to start by addressing the omissions. Mr. Kalouma in his asylum application recounted the murder of his uncle, the rape of his sister, and left out the beatings, which tragically have become fairly routine in a place like Sudan. This is not evidence of Mr. Kalouma's untruthfulness. The Ninth Circuit has held time and time again that the mere omission of detail from an asylum application is not substantial evidence upon which an adverse credibility determination can be based. There's no need to set forth every single cause by which an asylum claim could be granted in the application. The government contends here that the beatings that Mr. Kalouma left out represent personal mistreatment to him, and therefore they go to the heart of the asylum claim. But that confuses the standard. The standard for inconsistent testimony is, indeed, whether inconsistencies go to the heart of an asylum claim. But here we have an omission, which has a unique standard. Just because an that by leaving them out, the petitioner's being untruthful. Counsel, may I interrupt you for a second? Are you claiming, then, that his theory was imputed persecution, or simply that there was direct persecution, but it wasn't a material omission to leave out evidence of the direct persecution? The latter, Your Honor. We are claiming past persecution. Well, why wouldn't it be material, then, to his asylum application if he left out beatings that were directed against him in order to establish direct persecution? How is that not material? The short answer, Your Honor, is I think there needs to be more than just an omission of material facts from an asylum application. For example, under Alvarez-Santos. So you would concede that they are material and they do go to the heart of his claim? Absolutely, Your Honor. Okay. All right. In Alvarez-Santos, the petitioner, Mr. Alvarez-Santos, left out a crucial part of his claim, an incident where he was stabbed, fled from his country. It was actually the pivotal incident, according to the court, that led him to seek asylum. And the court said that, in and of itself, having been left out of his application would not be sufficient to warrant an adverse credibility determination. Instead, the court focused on the manner in which the omitted facts were introduced. In that particular case, the facts were introduced, you know, not in the asylum application on direct or on cross, but at the very end, after a short break with the petitioner's attorney. And he explained that he had an itch in his shoulder, which is why he omitted the facts here. Mr. Kluma explained that he thought he would have a chance to describe these events at the hearing. And if you look at the asylum application, it asks, have you or any family member suffered persecution? Here, it's not unreasonable to see that Mr. Kluma, having witnessed the murder of his uncle and helplessly watched the rape of his sister, that those events would be the ones perhaps burned in his memory and more likely to appear at first on his asylum application. Let me just turn to another point, which is the IJ's finding of implausibility. One of the facts that bothered the IJ was Mr. Kluma's return to Sudan. He said that that undermined his testimony. Mr. Kluma testified that he spent some time in a refugee camp in Uganda, where he managed to escape. Ultimately, the people there took offense at the refugees, began to drive them out. Mr. Kluma had no money, no food, really nowhere else to turn, and hoped to find his family back in Chambay, or maybe someone that he knew. And without any alternative, he returned to Sudan. The IJ and the government contend that that makes Mr. Kluma's claim that he fears returning to Sudan incredible, because who would return to a place of such genocide? But the IJ cites nothing in the record other than his speculation that no one could possibly return to a place like that for his findings. Neither does he cite any evidence in the record that it would be implausible for Mr. Kluma to avoid recruitment there for the two years after he returned to Sudan, or that he could survive there without incident. This is exactly like the case of Daima's job, where Mr. Daima's job left Nicaragua for Costa Rica for a year. He, too, returned, just like Mr. Kluma, because he had heard family members were arrested, like Mr. Kluma was looking for his family. He survived, just like Mr. Kluma, in Nicaragua for several years before escaping. And the court ultimately determined that that did not undercut his fear of persecution in his home country. I would submit that the IJ here simply has not identified anything in the record to support these plausibility determinations. Do you want to save your balance of your time? I would, Your Honor. Thank you. Good morning, Your Honors. My name is Carol Federighi. I represent the respondent, Attorney General Gondalez, in this matter. Your Honors, the board and the immigration judge reasonably concluded that Mr. Kluma was not credible, and on that basis denied his application for asylum. I want to ask you, before we get into it, and I would appreciate it if you'd keep your voice up and speak into the... Okay, sure. But if you look at the administrative record of 34, the IJ's decision, you got that? Yes. Okay. He seems to have discovered an amendment that imposes a new burden on an applicant, and makes a great deal of it. So, Hoover has not established his identity. And he says, we don't have any cases on it, but here it is. Now, how can he possibly be right on that question of law? Well, he is talking about a new statutory requirement, but the requirement that an asylum application establishes identity has always been a requirement. You think it's Kluma's? Well, this is a new one, he says. Kluma must meet this to get anywhere. Where does that come from? Well, the case of matter of... there's a board case. Well, he says it never comes from anywhere. It's new. He's talking about the new statutory requirement. All right, well then, what justification does he have for that precedent? For establishing that precedent? In any case where there's an asylum application, the board has held previously that it's essential... So it's not a new requirement? No, it's not a new requirement. Well, he's wrong in interpreting the statute. No, he's not wrong. Well, you've got to choose. Either he is right and says this is absolutely new, or he's wrong and there's some precedent for it. So which way do you want to go? Well, I'll opt for the latter, but... What's the latter? That there's precedent for requiring an asylum application to establish his identity. Well, why does he think it's new? This is amazing. He says, I don't have any case for it? And that permeates his opinion. This man hasn't shown his identity. Now, I'd like to draw your attention to what that statute talks about. The new one that he's misinterpreting. It talks about the government running an identity check. It's a burden on the government, not a burden on the petitioner. He's got it backwards. Do you agree with that? I need to pull out... If I can pull out the statutory section, it's involved. All right, do that. Well, first, to start out, in asylum cases, the burden is always on the family to establish his identity. I gave you a little time to look up the statute. Tell us what the statute says. The statute says that the asylum cannot be granted until the identity of the applicant has been checked against all appropriate records. So it doesn't purport to impose a burden of proof on either party. Well, who is going to check all the records? The government will check, but the individual has to prove his identity. No, of course. There has to be some proof who you are. But this is a new requirement of law, says the IJ. He has to establish. He has to meet the check. I respectfully disagree. Well, how can you disagree when he says it in so many words? I've discovered this law. I'm going to impose the burden. Well, he was not aware. Perhaps the IJ was not aware of the precedent board decision. He was not aware that there was always the person. The petitioner has to show where he comes from and so forth. But this identity thing is something he thinks comes out of the blue. It's new. He's discovered it. You read page 34 and see that? Yeah, I see that. And it permeates the decision. I don't know who this guy is. Right, and that's an important fact. Because of a statutory requirement. Even if the IJ mistook the law, that this is not illegal. He makes a legal issue and we shouldn't reverse? No, it's not a legal issue. Why isn't it a legal issue? Wait a minute. Why is it not a legal issue if he misinterprets the law? He did not misinterpret the law. He mistook the fact that there was prior case law establishing that identity is an important word. He is saying what the law is based on the new statute. Not on some prior case. He says this is new. Can you deny that? Do you deny it? He does say it's new, but as I said, he was unaware of prior case law, which does exist. There isn't any prior case law in this new law. Not on the new law, but on the identity. I give up if you can't see that. Counsel, let me ask just in terms of the procedure as to how it works. Are you saying that when the applicant files an application, he obviously has some obligation to establish who he is? And that once he does that, then the government has an obligation under the statute to conduct a records check based on the identity that is presented to it. And are you saying that what's new here was the fact that there was a provision in the Real ID Act that codified the government's obligation to conduct this records check, but that the petitioner has always had the obligation to establish the bona fides of his identity so that a records check can be performed? Yes, Your Honor. But didn't he do that here? There's no question from the get-go he identified who he was. He stated his name. That never changed. No, that's correct. From the get-go. He laid out on his application from the time of his arrest, when he was arrested coming across the border. They asked him who he was, and he gave them his name, told them where he was from. What more is he required to do? He needs to provide some proof that he is. He has to provide his passport or something? Passport, a birth certificate. He was in two refugee camps. He should have had refugee documents from those camps. If all else fails, letters from people that knew him or affidavits or something to show that he is who he says he is. His identity is as it was. How was he to get affidavits about who he is? Or how was he to get any documentation? He's coming from the Sudan. Right, but he had this person, Gabriel, who helped him to get here. He could have obtained an affidavit from that person. He was in Sudan for two years after that. Is there anything in the record here that shows that the government checked his ID against anything? Not that I know of, Your Honor. That was his obligation, wasn't it? Excuse me? It was the government's obligation to check his identity. Before granting asylum, but since the I.J. never found him credible and never got past that threshold. Didn't they have an obligation when the case was going on to be ready? I don't know at what stage they do it, Your Honor. I think they sometimes do wait until, or the I.J. waits to push it forward until he's made the threshold determination of whether he's eligible. I never heard of that. Judge Noonan's concern is that when you read the I.J.'s opinion, it appears, to me at least, that he was really concerned about who this fellow was. And it sort of permeates, as Judge Noonan said, which reasonably suggests to me, I think, that when the judge then began to look at his other, you know, his testimony, it was all colored by the fact that in the judge's view, this guy hadn't proved who he was. And so therefore, at the get-go, he discredited this fellow. And it seems like, you know, if it's a legal rule that does not replace the burden on the defendant to establish completely who he is, then it seems to me that in minimum, this case should go back to the board for a new hearing where that burden is not placed on the petitioner. It really should be on the government. You would think, in most cases, you know, this was it. Everybody knew that he was applying for asylum. So you would think that the government would check him out before the hearing, the continued hearing that occurred here. And come in, as Judge Noonan said, and said, we've checked his identity. This is the name he gave us. This is the name he used when he came in. This is the application. We've checked it out. And we can find nothing about this guy. Absolutely nothing. Then you might have something. Well, I think it's wrong to put the burden on the government to establish the... You don't think the statute does that? No, the burden is on the asylum applicant to establish his eligibility for asylum. No, but to establish identity. Whose burden is it? That's his burden to show that he is who he says he is because that's part of his application. He is presenting himself as a Christian from Sudan named John Kaluma. He needs to prove that that's who he is as part of his asylum application because that's an essential element of his claim is that he's a Christian from Sudan. It's important that he establishes identity to make sure that he's not someone... that he's not masquerading as a Christian from Sudan, that he's not a Muslim from Sudan or someone from Uganda or something else like that. So the absolute base of his claim is the fact that he says he's a Christian from Sudan. So it starts from there. So is the problem that if he is not who he says he is and he has provided no corroborating evidence of his identity, whether by way of affidavits, birth certificates, passports, whatnot, the government doesn't have any way to establish his identity because these indices that they are checking at best might be based upon a known set of fingerprints or a known DNA sample or something that would allow the government to confirm that he is who he says he is. But if he simply provides a name and nothing more, what can the government do in that case? Well, I agree with that to some extent. I don't know to what extent we have just names of people, for example, from Sudan who have been identified as persecutors there. So there might be a possibility that just a name check could reveal useful information. But without, like you said, more information about who he is, just doing a name check would be... We know the government didn't do that. As far as I know, they did not. They didn't do anything. I have run out of time, but I would like to address, if I may, just your comment that it colored the IJ's decision on the other elements of his claim. And I don't think that's true. I think, yes, he was troubled by the lack of identity proof, but then he moved on and looked at the rest of his testimony and found these material contradictions and omissions that are identified in the brief, the seven different points. Well, six if you remove identity from it. And in particular, the murder of his uncle, where he came up with three different stories about what happened at the time. First he was in hiding, then he intervened and was hurt, and then to sort of reconcile them, he said, well, I intervened and was hurt, and then I ran and hid. So that was a very shifting story that was one of the major basis for the IJ's decision in addition to and independent of the identity findings. So if there are no further questions, I am out of time. Okay. Thank you. Thank you. Your Honor, I'd just like to respond to a few brief points raised by counsel. First, I'd just note that Mr. Coloma did,  and the government did run a check on what they call the IDENT data system, which apparently came up negative. But that does us good only if there's a known set of fingerprints in the government's database. Isn't that right? That's right, Your Honor. So the fact that a person comes in, says I'm John Coloma, and here's a set of my fingerprints, unless there's a known set in the database, that doesn't tell us any more than my name is John Coloma. That's right, Your Honor. It's of some but limited utility. If we remanded it, what documentation or corroborating evidence would Mr. Coloma have to resolve this identity concern? It's difficult, Your Honor. He has really little available to corroborate. As he testified to, he went back to Sudan from Uganda. The village of Atuk was razed down. As he said, no one was there. His court has said before that such evidence, such corroborating evidence from foreign countries, almost never easily available, certainly not in this case. And the applicant is not required to corroborate with those sorts of things. The government cites to... You do agree, do you not, that he does have the initial burden of establishing his identity? That's right, Your Honor. And that can be done through his own testimony if it's determined to be credible. The problem we have here is it was found to be incredible. That's right, Your Honor. The question is what does he have to show who he is? And I guess your answer is very little. Very little, Your Honor. So to the extent that the court determines the adverse credibility determination should be reversed, I would submit that his testimony is sufficient on that matter. Let me just turn briefly to one other point as my time is running out. Mr. Kaluma recounted the murder of his uncle who was dragged from his hut, beaten viciously outside the hut, and later died in the hut. The IJ and the government make much of the fact that Mr. Kaluma said he died in the hut. I would submit this is a distinction without a difference. Mr. Kaluma added some detail to his testimony, but to say he was murdered in the hut or outside the hut where it happened in both places I think is equally accurate. Okay, is that it? Yes, Your Honor. Thank you. Kaluma v. Gonzalez is submitted. We'll take our next case, Hussain v. Gonzalez.
judges: Noonan, Paez, Tallman